IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

OLADIPO H. MURITALA,

    Plaintiff,

v.                                                     Civil Action No.: 3:07cv408

COMMONWEALTH OF VIRGINIA,
VIRGINIA DEPARTMENT OF
TRANSPORTATION,

    Defendant.

## **MEMORANDUM OPINION**

Before the Court is Defendant Commonwealth of Virginia, Virginia Department of Transportation's ("VDOT") Motion for Summary Judgment. (Docket No. 15.) Plaintiff Oladipo H. Muritala, proceeding *pro se*, filed a response, and Defendant replied. The Court held a hearing on this matter. Accordingly, the matter is ripe for adjudication.

## **I. Standard of Review**

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial.

*Celotex*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex*, 477 U.S. at 323-24). In this context, a *pro se* complaint should be liberally construed. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). But even where a *pro se* complaint is given the full benefit of liberal construction, the Court has "'no obligation to *sua sponte* raise and address any and every claim that might arguably be presented by the facts as presented.'" *Cain v. Virginia*, 982 F. Supp. 1132, 1134 (E.D. Va. 1997) (*quoting Brock v. Carroll*, 107 F.3d 241, 242 (4th Cir. 1997)).

## II. Facts

Muritala is a black male naturalized U.S. citizen of Nigerian origin. He holds bachelor's and master's degrees in accounting, and is a certified public accountant. At all relevant times, Muritala worked for VDOT as a Federal Grants Accounting Manager or Coordinator. Federal Grants account for the majority of funding in VDOT and in VDOT's Transportation and Mobility Planning Division ("TMPD"). On his application for employment, Muritala represented that as a

Federal Grants Accounting Coordinator, he ensured reimbursements, approved daily federal bills, electronically signed bills, maintained a database, developed desk procedures for new employees, managed fiscal activities, analyzed and reviewed federal project agreements, and performed monthly reconciliations. Muritala also maintained that he had experience in governmental financial and policy developments.

In the Fall of 2004, VDOT advertised to the general public an opening for a General Administration Manager II, Position Number 17970 in the TMPD. The closing date for the First Job Announcement was October 1, 2004. The qualifications listed for the position included: "College education to include business, mathematics, or finance/economics, or equivalent work experience preferred. Additional experience in the management and administration of transportation planning work programs and consultant contract processing is desired." (Muritala Dep., Ex. 8.)

Muritala responded to the First Job Announcement by submitting an application on September 30, 2004. More than fifty (50) people applied for the position. An interview panel of two (2) white women, Diane Mitchell (the hiring manager) and Marsha Fiol (VDOT's State Transportation Planner/Administrator in the TMPD), interviewed twelve applicants, including Muritala. Mitchell and Fiol offered the position to Robert White, a white male. Muritala concedes that White was qualified for the position. Around this time, Mitchell left TMPD and Fiol became the hiring manager for the position.

White declined the position. Because the panel had not identified a second choice candidate, Fiol selected Muritala and another black male applicant, Willard Mack, for second interviews. A new three-person interview panel consisting of Fiol (a white woman), a white

3

man, and another white woman (an observer), interviewed Muritala for a second time on February 1, 2005. Fiol states that Muritala did not impress the interview panel. After the second round of interviews, the panel decided not to offer the position to Muritala or Mack.

Fiol re-advertised the position to state employees only. The Second Job Announcement advertised an opening for the same position as the First Job Announcement - General Administration Manager II, Position Number 17970. In addition to limiting the applicant pool to state employees, Fiol made minor changes to the job description, increased the position's salary hiring range, and changed the closing date to March 3, 2005.

Fiol sent letters to the candidates who responded to the First Job Announcement, including Muritala, advising them of the re-posting. The letters informed the former candidates that they were required to re-submit an application if they wanted to be considered for the Second Job Announcement. Fiol dated these letters February 15, 2005.

Muritala states that he did not receive a notice letter in the mail from Fiol. He asserts that he found out about the re-posting on March 2, 2005, when he asked a VDOT human resources employee why VDOT had not offered him the position from the First Job Announcement. At that time, the VDOT human resources employee gave Muritala a copy of the February 15, 2005 letter from Fiol.

Muritala did not submit an application for the Second Job Announcement. Muritala states he failed to apply because the one (1) day left prior to the March 3, 2007 deadline was insufficient for him to revise his resume and application. He also states that because he did not see a copy of the Second Job Announcement, he did not know that it was substantially similar to the First Job Announcement. Muritala did not seek an extension of time to submit an application

for the Second Job Announcement because he did not know that VDOT had the ability to grant him an extension.

Muritala maintains that the post office box address to which VDOT mailed the February 15, 2005 letter was invalid at the time. Muritala cannot confirm that he informed VDOT of his correct address. He asserts that VDOT should have known his correct address because his employer should have his correct address.

Fiol explains that a three-person panel, which did not include her, interviewed six (6) candidates who applied to the Second Job Announcement. One of the candidates was Sharon Freed, a white female high school graduate who had not applied to the First Job Announcement. Freed had eight (8) years of experience at VDOT and performed the duties of the General Administration Manager II ("GMAII") during the vacancy. The panel unanimously selected Freed "[b]ased upon knowledge and experience related to the position." (Fiol Decl. ¶ 12 & Ex. G.) The panel found that Freed "demonstrated a high level of knowledge of the key factors related to the position." (Fiol Decl., Ex. G.) The panel also noted that Freed had "performed comparable duties relating to finance, budgeting, accounts payable and human resources . . . ." (Fiol Decl. ¶ 11 & Ex. G.) Fiol agreed with the panel's selection and offered Freed the position.

### III. Discussion

Muritala asserts that VDOT discriminated against him, in violation of Title VII of the Civil Rights Act of 1964[1] "in failing to award him the [GMAII] position and in awarding it to a

---

[1] Title VII of the Civil Rights Act states in relevant part: "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1).

far less qualified white, American born person." (Compl. ¶ 19.) He also asserts that "VDOT failed to notify the persons who applied pursuant to the first advertisement . . . . intentionally and as part of a plan to discriminate against [him]." (Compl. ¶ 15.) To prevail on his Title VII claim, Muritala must establish a prima facie case of employment discrimination. *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994). The elements of the prima facie case of discrimination are:

> (i) that [the plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its hiring decision. *Id.*; *Carter*, 33 F.3d at 458 (stating that the prima facie case can be rebutted by showing that the person hired was better qualified for the position). The burden then shifts back to the plaintiff to show that the defendant's reason is a pretext and the hiring decision was intentional discrimination. *Carter*, 33 F.3d at 458.

A.     **First Job Announcement**

First, Muritala alleges that "[t]he discrimination in this case started with the first advertisement . . . [with] the non-selection of the Plaintiff who has comparable qualifications with the first candidate that was selected." (Pl.'s Resp. 6.) Muritala concedes that White, the first candidate VDOT selected for the GMAII position, was qualified. Muritala argues that VDOT discriminated against him because after White declined the position, VDOT did not hire Muritala even though he was the more qualified of the two candidates that VDOT selected for a second interview. VDOT argues that Muritala fails to establish a prima facie case for

6

discrimination as to the First Job Announcement because VDOT did not ultimately hire any candidate from the First Job Announcement for the GMAII position.

VDOT's decision not to hire any candidate who applied in response to the First Job Announcement does not defeat Muritala's claim because courts do not apply the elements for showing a prima facie case rigidly. *See Furnco Const. Corp. v. Waters*, 438 U.S. 567, 575-76 (1978) (explaining that the *McDonnell Douglas* elements for establishing a prima facie case of discrimination under Title VII "will vary" because each element "is not necessarily applicable in every respect to differing factual situations"). It appears contrary to the purposes of Title VII that an employer could escape liability by not filling a position where it was motivated to reject all candidates for discriminatory reasons. However, even assuming Muritala could establish a prima facie case as to the First Job Announcement, Muritala's claim fails because he presents no discriminatory reason for VDOT's hiring decision.

Muritala maintains that VDOT did not hire him after his second interview because Freed had "vowed not to report to a Black male, [and] if a Black male was selected for the position, she would retire her position." (Pl.'s Resp. 4.) Muritala states that another VDOT employee told him about Freed's remark. These statements are inadmissible hearsay. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995) (considering inadmissible hearsay and unattributed rumors submitted by a plaintiff through affidavits and depositions as "neither admissible at trial nor supportive of an opposition to a motion for summary judgment"). Even if the Court considers this statement allegedly made by Freed, it is of no moment because Freed was not part of VDOT's employment decision. *See Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 314 (4th Cir. 2001) (concluding that statements made by

7

other employees not involved in the decision to terminate the plaintiff were not relevant in a Uniformed Services Employment and Reemployment Rights Act case). Muritala also does not allege that Fiol, who made the final hiring decision, heard or otherwise was influenced by Freed's alleged statement.[2] *See Cooper v. Paychex, Inc.*, 960 F. Supp. 966, 970 (E.D. Va. 1997) (considering a non-decisionmaker's comments relevant in considering the plaintiff's Title VII claim because the defendant relied on these comments when it fired the plaintiff). Therefore, to the extent that Muritala argues that VDOT did not hire him for the GMAII position after his second interview because of Freed's comment, his argument fails.

As to the decision to re-post the job, the Court cannot substitute its judgment for that of an employer. *See DeJarnette v. Corning Inc.*, 133 F.3d 293, 289-99 (4th Cir. 1998) ("'Title VII is not a vehicle for substituting the judgment of a court for that of the employer.'") (citation omitted); *Smith v. Am. Nat'l Red Cross*, No. 91-1884, 1992 WL 357850, at *3 (4th Cir. Dec. 4, 1992) (rejecting the plaintiffs' argument that defendant's re-advertising a position was an attempt to avoid hiring them because "[i]t is the employer's prerogative" to set employment criteria). Therefore, absent any evidence of discrimination, the Court will not second guess VDOT's decision not to hire Muritala or Mack and, instead, to re-advertise the position. Muritala's claim on the first hiring decision fails.

---

[2] At the March 4, 2008 hearing, Muritala identified the VDOT employee as Mary Lou Brown. The parties represented that at a scheduled deposition of Brown, there was a problem with the court reporter. Therefore, the parties interviewed, rather than deposed, Brown. VDOT asserted that during the interview, Brown denied hearing Freed make the comment. The Court need not make a finding as to the admissibility or veracity of this statement, because the decision does not turn on whether it was or was not said.

8

B. **Second Job Announcement**

Second, Muritala argues that VDOT discriminated against him by hiring a white female high school graduate for the GMAII position. This argument fails because even if Muritala establishes a prima facie case for discrimination, he has not rebutted VDOT's legitimate reason for hiring Freed.

1. **Prima Facie Case**

VDOT maintains that because Muritala did not apply for the GMAII position after the Second Job Announcement, he has not established a prima facie case of discrimination. *See Tyndall v. Dynaric, Inc.*, 997 F. Supp. 721, 728 (E.D. Va. 1998) ("If an employee does not apply for a desired promotion, the employer need make no decision with respect to that employee, and there can be no actionable discriminatory motivation."). Muritala argues that VDOT should have considered him because he applied for the GMAII position when he submitted an application on September 30, 2004.

Muritala concedes that he knew about the Second Job Announcement before the closing date and did not apply. He received a copy of the notification letter from a VDOT human resources employee on March 2, 2005. The letter clearly stated that applicants must re-submit applications to be considered for the GMAII position. Although one day may not be ideal for preparing a job application, Muritala still could have applied because the Second Job Announcement was substantially similar to the First Job Announcement. He also could have sought an extension to submit his application.[3]

---

[3] Muritala does not allege that he failed to apply because he believed doing so would be futile. *See Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998) ("[A] plaintiff who has failed to apply for a job may still carry his burden of proof if he can demonstrate that 'he would have

9

### 2. Legitimate, Non-Discriminatory Reason for VDOT's Hiring Decision

Assuming *arguendo* that Muritala has made out a prima facie case under *McDonnell Douglas*, VDOT asserts that it promoted Freed because she was the best qualified candidate.

> [VDOT] selected Freed for the job because of 1) her high level of knowledge of the key factors related to the [GMAII] position; 2) her lengthy work history experience with VDOT[;] 3) her tenure and experience in [TMPD;] and 4) her track record of having performed the functions of the [GMAII position] for more than six months since it had become a vacant position while continuing to perform the functions of her job.

(Def.'s Mem. in Supp. of Mot. Summ. J. 9.) Freed met the minimum requirements for the GMAII position. She also submitted a 110-page application packet that included an "Acknowledgment of Extraordinary Contribution," thank you e-mails, a performance evaluation, and samples of Freed's work. (Fiol. Decl., Ex. H.) This, along with Freed's interview summary sheet and interview notes, supports VDOT's assertion that Freed was the best-qualified candidate. *See* Fiol Decl., Ex. G. Thus, VDOT has stated a legitimate, non-discriminatory reason for hiring Freed, and the burden shifts to Muritala to show that this reason is a pretext for discrimination. *See Love v. Alamance County Bd. of Educ.*, 757 F.2d 1504, 1507 (4th Cir. 1985) (considering a school board's hiring objectively more qualified candidates to be a legitimate, non-discriminatory reason for its decision not to promote the plaintiff).

---

applied but for accurate knowledge of an employer's discrimination and that he would have been discriminatorily rejected had he actually applied'") (quotation omitted); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-66 (1977) ("When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture[,] he is as much a victim of discrimination as is he who goes through the motions of submitting an application.").

### 3. Rebutting VDOT's Legitimate Basis for Hire

To rebut VDOT's reasons for hiring Freed, Muritala maintains that he is better qualified because of his education and experience, meaning that any claim that Freed was more qualified must be pretextual. Second, Muritala contends that VDOT has a glass ceiling that prevents black employees from reaching higher levels,[4] so that any other articulated reason for his non-hire must be pretextual, too.

#### a. Education and Experience

Muritala relies on his education and experience to assert that he was more qualified than Freed. Muritala is a certified public accountant with bachelor's and master's degrees in accounting. Freed has only a high school diploma. This alone, however, does not prove that Muritala is more qualified than Freed because neither job announcement stated a minimum educational requirement. Instead, both job announcements indicated that a college education or equivalent work experience was preferred.[5] *Compare Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005) (finding no discrimination where the employer hired the

---

[4] In its Reply, VDOT states that Muritala "appears to rely on the Equal Employment Opportunity Commission's (EEOC) Determination to establish his *prima facie* case," or to show "that VDOT's promotion decision was pretextual." (Def.'s Reply 8.) To the extent that Muritala makes this argument, he fails. *See Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (concluding that even where EEOC's findings are admissible, they "are not sufficiently probative to create a genuine issue of material fact" about the defendant's intent to discriminate); *see also Redden v. S.C. Dep't of Mental Health*, Civil Action No. 4:05-3504-RBH, 2007 WL 2823016, at *13 (D.S.C. Sept. 27, 2007) (clarifying that EEOC findings may accord some weight at summary judgment where the findings do not just repeat the plaintiff's allegations).

[5] It is VDOT's policy not to articulate specific educational requirements unless mandated by law. VDOT's Department of Human Resources Management Policies and Procedures Manual states: "All job announcements . . . . must not specify a certain number of years of experience nor a specific educational requirement unless sanctioned by law." (Braxton Decl. ¶ 4 & Ex. A at 5.)

candidate with less education because the educational requirement was not a deciding factor). Moreover, employers, and not employees or applicants, set hiring criteria, so VDOT could properly consider factors besides education. *See Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1130 (4th Cir. 1995) ("Even if [the plaintiff's] education and outside experience were objectively superior to [the other candidate's], [the employer] could properly take into account both the objective factor of [the other candidate's] outstanding performance . . . and the more subjective factors like his good interpersonal skills and his ability to lead a team.").

As to his experience, Muritala notes his previous positions including: 1) Fiscal Director at the Association for Community Living; 2) a position with the City of Springfield Public Schools; and 3) and his position at VDOT. Even accepting Muritala's unverified representations about his experience, VDOT presents ample evidence of Freed's relevant experience and qualifications. Freed had worked at VDOT for eight (8) years and had been performing the functions of the GMAII position for the six (6) months that the position was vacant. Freed also had relevant experience in finance, budgeting, accounts payable, and human resources. The evidence supports VDOT's assertion that Freed was the best qualified candidate. Regardless of Muritala's view of their respective abilities, the Court must look to the propriety of VDOT's assessment of the applicants' qualifications independent of Muritala's perceptions when deciding whether VDOT hired Freed for non-discriminatory reasons. *See Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980) (noting in an Age Discrimination in Employment Act case that the employer's perception of the applicant's performance, and not the applicant's self-perception, was the relevant inquiry in deciding whether the employer terminated the employee properly). On this record, Muritala fails to carry his burden that the stated reason for non-hire is pretextual.

    **b.**  <u>**Glass Ceiling**</u>

 In a second attempt to show pretext, Muritala asserts that "VDOT has a de facto glass ceiling which makes it impossible for qualified black employees to reach the higher levels." (Pl.'s Resp. 5.) The record suggests that minorities are represented throughout VDOT. The GMAII position is in Pay Band 6. As of January 31, 2008, minorities comprised 13.7% of employees in Pay Band 6. In addition, minorities comprised 19.5% of employees in Pay Band 7, and two (2) individuals in appointed positions (40% of appointed employees). Even presuming the finding of a glass ceiling would pertain to Muritala's case, Muritala would have to show that such a circumstance affected his non-hire in order to rebut the presumption at hand. He does not. Accordingly, Muritala fails to show that Defendant's reason for hiring Freed was a pretext for discrimination.

**C.**  <u>**Notification of Reposting**</u>

 Finally, to the extent it constitutes a separate basis for his claim, the Court considers Muritala's allegation that VDOT failed to notify him of its re-posting the GMAII position "intentionally and as part of a plan to discriminate against [him]." (Compl. ¶ 15.) Even assuming that VDOT had a duty to notify Muritala of the re-posting and that VDOT did not notify him, Muritala must present sufficient evidence that any failure to notify him was based on discrimination. *Compare Walker v. Glickman*, 241 F.3d 884, 890 (7th Cir. 2001) (rejecting the plaintiff's argument that the defendant discriminated against him by failing to notify him about a job opening where there was no evidence that the defendant had a duty to notify the plaintiff); *Lightfoot v. Bd. of Trustees of Prince George's Cmty. Coll.*, 457 F. Supp. 135, 144 (D. Md.

1978) (rejecting the plaintiff's allegation of discrimination where the defendant had no general practice of notifying previous applicants of re-advertisements).

However, the Court need not turn to an evaluation of intent to discriminate, because Muritala received notice of the opening. VDOT notified Muritala on March 2, 2005, of the Second Job Announcement; this was before the closing date. Human Resources provided Muritala a copy of the Fiol letter, and he was told orally that the Second Job Announcement existed. Prior to that, VDOT had mailed a notification letter to Muritala, dated February 15, 2005. Even accepting that Muritala did not receive the notification letter, the record suggests that, at worst, VDOT did not have Muritala's correct address.[6] Muritala plainly concedes he knew about the job opening before it closed. Accordingly, Muritala fails to establish that VDOT discriminated against him by not notifying him of the re-posting.

### IV. Conclusion

For the foregoing reasons, the Court shall GRANT Defendant's Motion for Summary Judgment. (Docket No. 15.) The Complaint shall be DISMISSED.

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Entered: April 7, 2008

---

[6] It is worth noting that "once a letter is mailed, its receipt may be presumed within a reasonable time, equivalent to that normally required for a letter to pass through the mail." *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 916-17 (E.D. Va. 2004).